U.S. DISTRICT COURT
Southern District of Georgia
Filed in Open Court
11:04 A.M.
May 19, 2025
_____
Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | ) CR: 24-00057<br>) |
| CAMERON MARTINAS CURRY | )<br>)<br>) |

**PLEA AGREEMENT**

Defendant, Cameron Martinas Curry represented by Defendant's counsel, Grant Usry and the United States of America, represented by Assistant United States Attorney David H. Estes, have reached a plea agreement in this case. The terms and conditions of that agreement are as follows.

1. <u>Guilty Plea</u>

Defendant agrees to enter a plea of guilty to Count One of the Indictment, which charges a violation of *18 U.S.C. § 1704*, Count Three of the Indictment which charges a violation of *18 U.S.C. § 1708 & 2*, Count Seven of the Indictment which charges a violation of *18 U.S.C. § 1344 & 2*, and Count Eleven of the Indictment which charges *18 U.S.C. 1028A & 2*.

2. <u>Elements and Factual Basis</u>

The elements necessary to prove the offense charged in Count One are (1) The defendant knowingly and unlawfully possessed any key to any lock box, lock drawer, or other authorized receptacle for the deposit or delivery of mail matter; and, (2) The defendant possessed the key with the intent unlawfully or improperly to use or cause to be unlawfully or improperly used.

The elements necessary to prove the offense charged in Count Three are (1) the letter or mail matter described in the indictment was stolen from a post-office or post-office station, a mail receptacle or an authorized depository for mail matter. (2) the Defendant possessed the letter or mail matter after it was stolen; and (3) the Defendant knew that the letter mail matter was stolen.

The elements necessary to prove the offense charged in Count Seven are (1) that the Defendant knowingly carried out or attempted to carry out a scheme to defraud a financial institution and to get money, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact; (2) that the false or fraudulent pretenses, representations, or promises were material; (3) the Defendant intended to defraud the financial institution; and (4) the financial institution was federally insured or chartered.

The elements necessary to prove the offense charged in Count Eleven are (1) the defendant knowingly transferred, possessed, or used another person's means of identification; (2) without lawful authority; and (3) that the defendant used the means of identification during and in relation to Bank Fraud as alleged in the indictment.

Defendant agrees that the Defendant is, in fact, guilty of these offenses. The Defendant agrees to the accuracy of the following facts, which satisfy each of the offense's required elements:

On 09/27/23 deputies of the Richmond County Sherriff's Office (RCSO) responded to Blanchard and Calhoun Realty, Augusta, GA in reference to a stolen check. Employee Tom Barrett who stated that a check payment in the amount of $7,243, drawn on the Wells Fargo account of Blanchard and Calhoun, was placed in the mail by staff member, Addie Blaton. Blaton placed the check in the USPS drop box on 09/14/23 at 125 Commercial Blvd in Martinez, Ga where it was stolen from that location and cashed the next day, 9/15/23. Barrett received notification from Wells Fargo that the check was deposited the very next day by an unknown subject. Barrett called the check receiver, Greater Augusta Associates staff, Stacie Atkins, and they stated that they had not received the check.

On October 5th, 2023, RCSO responded to a complaint of a theft in the mail at Walker Real Estate located at 2479 Wrightsboro Rd Augusta, Ga. the victim, William E. Walker III, stated several of business checks of the business were stolen from the postal service. The mail was deposited in the blue post office drop box on 1434 Stovall Street. Walker said the checks were fraudulently endorsed and deposited into an unknown account. Walker stated the company mails out checks the 15th of every month (15 September) and noticed a total of eight checks were affected.

Further investigation determined that on August 25th, 2023, Jessica McNair opened a checking account at Regions Bank. On September 18th, 2023, one of the Walker Real Estate Checks # 2578 for $4410.00 was deposited in the Regions Bank account of Jessica McNair at the Regions Bank ATM at 2507 Peach Orchard Road, by the Defendant in a gray Dodge Challenger.

3

C.C

After receiving multiple reports of U.S. mail theft, investigators reviewed police reports, interviewed victims, and learned that many victims had their U.S. Mail stolen after they had placed their outgoing U.S. mail in the USPS Blue Box at the U.S. Post Office, located at 125 Commercial Boulevard, Martinez, Georgia 30907 ("Martinez Post Office"). To access the USPS Blue Box, there is a drive-through lane off Commercial Court. Based on this information, investigators began physical and electronic surveillance of this USPS Blue Box.

On November 8, 2023, at approximately 8:41 p.m., a Columbia County Sheriff's Office (CCSO) Communications Officer was watching a live feed on a surveillance camera located at the Martinez Post Office and saw a white SUV arrive at the USPS Blue Box from the wrong direction in the drive-through lane. The SUV's orientation to the USPS Blue Box was with the passenger side facing it. The Communications Officer saw a male exit the passenger side of the SUV, go to the USPS Blue Box, open the door of the USPS Blue Box, remove contents, and drive away. Based on the Communications Officer's observations in the live feed, CCSO Deputies were dispatched to that location.

CCSO Deputy Santana was in the area and at approximately 8:43 p.m. observed a White Ford Edge leaving Commercial Boulevard. Suspecting that U.S. Mail was stolen from the USPS Blue Box, Deputy Sanatana, assisted by CCSO Deputy Coule, initiated a traffic stop of the white SUV on Martinez Boulevard, a few feet from Commercial Boulevard. Deputy Santana and Coule contacted the vehicle's two occupants. The driver was Defendant. The Defendant provided deputies with his

Georgia driver's license. The passenger, Quavaun Rhodes, provided deputies with his name and date of birth. When deputies asked Rhodes to exit the vehicle, they observed in plain view what appeared to be stolen U.S. Mail on the front passenger side of the vehicle.

CCSO deputies detained Curry and Rhodes, and believing the White Ford Edge contained stolen U.S. Mail, CCSO deputies conducted a probable cause search of the vehicle. A short while later, USPIS Plumley arrived on the scene and assisted in the probable cause search of the White Ford Edge. While searching it, officers seized a GRAY APPLE IPHONE in CLEAR CASE, a BLUE APPLE IPHONE in CLEAR CASE and a BLACK APPLE IPHONE, and approximately twenty pieces of opened U.S. mail, including numerous uncashed personal and business checks written from the accounts of other individuals or entities and made payable to other individuals or entities. None of the checks were written to or from Curry or Rhodes. The face value of the suspected stolen checks was over $9,000. The Deputies seized the cell phones. A CCSO investigator contacted one of the payor victims on the checks. The payor victim told the investigator that he placed their check in that USPS Blue Box earlier that day.

After arriving on scene Inspector Plumley examined the USPS Blue Box on November 8, 2023, and determined there was no forced entry. While searching the White Ford Edge, investigators were unable to locate the Arrow Key that was used to open the USPS Blue Box. Consequently, investigators began canvassing the area in search of the Arrow Key. A short while later, Deputy Sanatana found a key ring



with two USPS Arrow Keys on the ground at the stop sign at the intersection of Commercial Boulevard and Martinez Boulevard, approximately thirty (30) feet from where the White Ford Edge was stopped by CCSO deputies. The Defendant had thrown the keys out of the vehicle before being stopped. After examining the serial number on each Arrow Key, Plumley determined that one is in the series that opens the USPS Blue Box at the Martinez Post Office at 125 Commercial Boulevard. Plumley determined the second USPS Arrow Key is assigned to the Marietta, Georgia Post Office.

The Defendant and Rhodes were subsequently arrested by the CCSO for State Violations of Mail Theft.

A Federal Search Warrant was obtained for Curry's phone. Agents found approximately 40 images of checks on Curry's phone. The total face value of these checks is approximately $485,000.

Agents interviewed various business owners whose business checks were found on Curry's phone. For example, SIG Management mailed multiple checks in Sept/Oct 2023 and approximately 25 were stolen and cashed and 8 of these checks were on Curry's phone. Another Business, Gold Cross Ambulance Service who purchased Southstar Ambulance Services and had three checks altered one of which was altered and made payable to Cameron Curry.

Also found on Curry's cell phone were photos of the Stolen Arrow Keys, photos of numerous debit and credit cards, drivers licenses belonging to other people, photos of printers and ink, a photo of a computer screen showing the rental of a Grey Dodge

Challenger before the deposit in the indictment, a photo of a receipt for a deposit into Jessica McNair's Regions Checking Account, a screenshot of Jessica McNair's Regions Bank account showing Pending Cash App transactions of $5000.00 dollars on October 16, 2023, a photo of an open U.S. Postal Blue mail receptacle, and numerous other text messages and screenshots showing Cameron Curry was in the business of stealing checks form the mail and depositing, altering, or selling them for the purposes of fraud.

On September 23, 2024, Agents of the FBI interviewed Jessica McNair and she admitted to letting Cameron Curry run checks through her Regions Bank account. She gave him her card, pin number, and SS number. After the checks were deposited, she paid him money via Apple Cash and withdrew approx. $4,500 from the bank to give to Curry.

3. <u>Possible Sentence</u>

Defendant's guilty plea will subject the Defendant to the following maximum possible sentence: Count One is not more than 10 years imprisonment, 3 years supervised release, a $250,000 fine, such restitution as may be ordered by the Court, and forfeiture of all forfeitable assets. Count Three is not more than 5 years imprisonment, 3 years supervised release, a $250,000 fine, such restitution as may be ordered by the Court, and forfeiture of all forfeitable assets. Count Seven is not more than 30 years of imprisonment, a $1,000,000 fine, 5 years supervised release, such restitution as may be ordered by the Court, and forfeiture of all forfeitable assets



and Count Eleven is not less than 2 years imprisonment consecutive to any term of imprisonment imposed for Count Seven of the Indictment in this case, 3 years supervised release, and a $250,000 fine. The Court additionally must impose a $100 special assessment per count of conviction.

4. <u>No Promised Sentence</u>

No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range. The Court is not bound by any estimate of sentence given or recommendations made by Defendant's counsel, the government, the U.S. Probation Office, or anyone else. The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw Defendant's plea of guilty if the Defendant receives a more severe sentence than the Defendant expects.

5. <u>Court's Use of Sentencing Guidelines</u>

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for Defendant's offense. The Sentencing Guidelines are advisory; the Court is not required to impose a sentence within the range those Guidelines suggest. The Court will consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), in determining the Defendant's sentence. The Sentencing Guidelines are based on <u>all</u> of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty.

8



C.C

6. <u>Agreements Regarding Sentencing Guidelines</u>

   a. <u>Use of Information</u>

   Nothing in this agreement precludes the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range. Any incriminating information provided by the Defendant during the Defendant's cooperation will not be used in determining the applicable Guidelines range, pursuant to Section 1B1.8 of the Sentencing Guidelines.

   b. <u>Acceptance of Responsibility</u>

   If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the government will move for an additional one-level reduction in offense level pursuant to Section 3E1.1(b) based on Defendant's timely notification of the Defendant's intention to enter a guilty plea.

   c. <u>Amount of Loss</u>

   The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that the amount of loss, for purposes of Section 2B1.1 of the Sentencing Guidelines, is more than $250,000 but less than $550,000.

   d. <u>Low End of Guidelines Range</u>

The government will recommend that Defendant be sentenced to the low end of the advisory Guidelines range determined by the Court at sentencing.

7. <u>Dismissal of Other Counts</u>

At sentencing, the government will move to dismiss any other Counts of the Indictment that remain pending against Defendant.

8. <u>Cooperation</u>

   a. <u>Complete and Truthful Cooperation Required</u>

If the Defendant cooperates, the Defendant must provide full, complete, candid, and truthful cooperation in the investigation and prosecution of the offenses charged in Defendant's Indictment and any related offenses. Defendant shall fully and truthfully disclose Defendant's knowledge of those offenses and shall fully and truthfully answer any question put to him by law enforcement officers about those offenses.

This agreement does not require Defendant to "make a case" against any particular person. Defendant's benefits under this agreement are conditioned only on Defendant's cooperation and truthfulness, not on the outcome of any trial, grand jury, or other proceeding.

   b. <u>Motion for Reduction in Sentence Based on Cooperation</u>

The government, in its **sole discretion**, will decide whether Defendant's cooperation qualifies as "substantial assistance" pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 and thereby warrants the filing of a motion for downward departure or reduction in Defendant's sentence. If such a motion is filed, the Court, in its sole

10



discretion, will decide whether, and to what extent, Defendant's sentence should be reduced. The Court is not required to accept any recommendation by the government that the Defendant's sentence be reduced.

9. <u>Forfeiture</u>

   a. Defendant agrees to forfeit Defendant's interest in any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the Counts of the Indictment to which Defendant has agreed to plead guilty. (collectively, the "Subject Property").

   b. Defendant waives and abandons all right, title, and interest in the Subject Property. Defendant agrees to take all steps requested by the Government to facilitate transfer of title of the Subject Property to the Government. Defendant further agrees not to file any claim, answer, or petition for remission or mitigation in any administrative or judicial proceeding pertaining to the Subject Property. If any such document has already been filed. Defendant hereby withdraws that filing.

   c. Defendant agrees to hold the government and its agents and employees harmless from any claims made in connection with the seizure, forfeiture, or disposal of property connected to this case. Defendant further agrees to waive the requirements of the Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

   d. Defendant waives and abandons Defendant's interest in any other property that may have been seized in connection with this case. Additionally,



Defendant waives any and all challenges on any grounds to the seizure, forfeiture, and disposal of any property seized in connection with this case. Defendant specifically agrees to waive any challenges arising under the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment.

10. <u>Financial Obligations and Agreements</u>

   a. <u>Restitution</u>

   The amount of restitution ordered by the Court shall include restitution for the full loss caused by Defendant's total criminal conduct. Restitution is not limited to the specific counts to which Defendant is pleading guilty. Any restitution judgment is intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction.

   b. <u>Special Assessment</u>

   Defendant agrees to pay a special assessment in the amount of $400.00, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

   c. <u>Required Financial Disclosures</u>

   By the date that Defendant enters a guilty plea, Defendant shall complete a financial disclosure form listing all Defendant's assets and financial interests, whether held directly or indirectly, solely or jointly, in Defendant's name or in the name of another. Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States Attorney's Office and to the United States Probation Office. Defendant authorizes

12



the United States to obtain credit reports on Defendant and to share the contents of those reports with the Court and the United States Probation Office. Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

    d.    <u>Financial Examination</u>

Defendant will submit to an examination under oath on the issue of Defendant's financial disclosures and assets if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of Defendant's guilty plea.

    e.    <u>No Transfer of Assets</u>

Defendant certifies that Defendant has made no transfer of assets in contemplations of this prosecution for the purpose of evading or defeating financial obligations or forfeiture created by this Agreement or that may be imposed upon Defendant by the Court at sentencing. Defendant promises that Defendant will make no such transfers in the future.

    f.    <u>Material Change in Circumstances</u>

Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

g. <u>Enforcement</u>

Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. Defendant understands and agrees that the financial obligations and forfeiture imposed by the judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that Defendant receives may be offset and applied to the judgment debt without regard to or affecting any payment schedule imposed by the Court.

11. <u>Waivers</u>

   a. <u>Waiver of Appeal</u>

Defendant entirely waives Defendant's right to a direct appeal of Defendant's conviction and sentence on any ground (including any argument that the statute to which the Defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute). The only exceptions are that the Defendant may file a direct appeal of Defendant's sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs Defendant's attorney not to file an appeal.

   b. <u>Waiver of Collateral Attack</u>



Defendant entirely waives Defendant's right to collaterally attack Defendant's conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack Defendant's conviction and sentence based on a claim of ineffective assistance of counsel.

c.   <u>FOIA and Privacy Act Waiver</u>

Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

d.   <u>Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver</u>

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a Defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules. If Defendant fails to plead guilty, or Defendant's plea of guilty is later withdrawn, all of Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

12.   <u>Defendant's Rights</u>

Defendant has the right to be represented by counsel, and if necessary, have the court appoint counsel, at trial and at every other critical stage of the proceeding.

15



Defendant possesses a number of rights which Defendant will waive by pleading guilty, including: the right to plead not guilty, or having already so pleaded, to persist in that plea; the right to a jury trial; and the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

15. <u>Satisfaction with Counsel</u>

Defendant has had the benefit of legal counsel in negotiating this agreement. Defendant believes that Defendant's attorney has represented Defendant faithfully, skillfully, and diligently, and Defendant is completely satisfied with the legal advice given and the work performed by Defendant's attorney.

16. <u>Breach of Plea Agreement</u>

If Defendant fails to plead guilty, withdraws or attempts to withdraw Defendant's guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the government is released from all of its agreements regarding Defendant's sentence, including any agreements regarding the calculation of Defendant's advisory Sentencing Guidelines. In addition, the government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and/or file new charges against Defendant that might otherwise be barred by this plea agreement. Defendant waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.



17. <u>Entire Agreement</u>

This agreement contains the entire agreement between the government and Defendant.

|  |  |
|---|---|
|  | TARA LYONS<br>ACTING UNITED STATES ATTORNEY |
| 5/7/25<br>Date | *(signature)*<br>Tania D. Groover<br>Chief, Criminal Division |
| 5/7/25<br>Date | *(signature)*<br>David H. Estes<br>Georgia Bar No. 361822<br>Assistant United States Attorney |

I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

5/5/2025
Date

_____
Defendant

I have fully explained to Defendant all of Defendant's rights, and I have carefully reviewed each and every part of this agreement with Defendant. I believe that Defendant fully and completely understands it, and that Defendant's decision to enter into this agreement is an informed, intelligent, and voluntary one.

5/5/2025
Date

_____
Defendant's Attorney

